In re MEMORIAL ESTATES,
INC., Debtor.

CHICAGO BANK OF COMMERCE,
a/k/a Associated Bank,
Plaintiff,

v.

AMALGAMATED TRUST AND SAV-
INGS BANK, As Trustee Under Trust
Agreement dated September 27, 1974;
known as Trust No. 2744, et al., Defen-
dants.

Appeal of William L. NEEDLER,
Appellant,

v.

Norman B. NEWMAN, Trustee and
Chicago Bank of Commerce,
Appellees.

Nos. 89 C 6770, 83 B 1016.

United States District Court,
N.D. Illinois, E.D.

Sept. 13, 1991.

George Grumley, Chicago, Ill., for Chica-
go Bank of Commerce.

James C. Truax, Chicago, Ill., for William
L. Needler.

MEMORANDUM OPINION

BRIAN BARNETT DUFF, District
Judge.

In a careful, thoroughly researched opin-
ion, Bankruptcy Judge Schwartz assessed
sanctions against attorney William L. Nee-
dler and his client for the dilatory and
unreasonable actions they had taken in the
course of litigating the action pending be-
fore Judge Schwartz. Because the assess-
ment of sanctions was within Judge
Schwartz' jurisdiction and was not an

abuse of his discretion (indeed, far from it, as the discussion below demonstrates), this court affirms his decision.

### Background

This case began in 1982, when Amalgamated Trust & Savings Bank (the Bank) brought a foreclosure action in state court against Memorial Estates, Inc. Cemco (the company represented by Mr. Needler) has an interest in the cemetery property owned by Memorial Estates and upon which the Bank was attempting to foreclose. Memorial Estates (apparently at Cemco's urging) filed a voluntary petition for reorganization under Chapter 11 in 1983 (the case was converted to a Chapter 7 liquidation later that year) and the foreclosure proceeding was removed to the bankruptcy court. In 1985 the bankruptcy court appointed a receiver. As is fully set forth in appendices A and B to the bankruptcy court's opinion, Cemco obstinately opposed the appointment, both before and after it was accomplished (the appendices record motions, emergency motions, motions to reconsider, appeals, motions for remand to the state court, and motions to vacate).

During the course of the bankruptcy proceedings, the Bank made a number of motions for sanctions against Cemco, its principal Barnard Savage, and Mr. Needler. The court reserved ruling on those matters until after the underlying bankruptcy proceedings had been resolved. On June 26, 1989 the bankruptcy court entered an order imposing $42,423 in sanctions upon Mr. Needler, Cemco and Mr. Savage. That decision generated a number of appeals. As far as this court's research has uncovered, both courts which have considered the question have held that the bankruptcy court had jurisdiction to enter the sanctions after the close of the remainder of the case. One court further held that the sanctions were appropriate, the other remanded for further fact-finding.

### Discussion

On this appeal, Mr. Needler has identified forty-six issues which he claims are before the court for decision. This court's understanding of its jurisdiction in this matter, however, is far more limited. While Mr. Needler apparently would like to reopen nearly every question decided by the bankruptcy court during the approximately six-year course of these proceedings, that is not the proper scope of this appeal. *This* appeal concerns the matter of sanctions entered against Mr. Needler, and there are only three issues which are properly before the court. First, whether the bankruptcy court had jurisdiction to enter the sanctions in the first place, second, whether the sanctions themselves were proper (included in this question is the converse—whether the bankruptcy court properly denied Cemco's motion for sanctions) and third, whether the court afforded Mr. Needler adequate process in imposing the sanctions. The court will address each issue in turn.

#### 1. Jurisdiction

This court is fortunate to have the guidance of two other courts' decisions on the precise jurisdictional question posed here. Judge Shadur addressed the question in November, 1989, see *In re Memorial Estates*, 89 C 3719, 89 C 5833, Transcript of Proceedings before Hon. Milton I. Shadur, November 7, 1989, contained in Appendix A to Brief of Plaintiff–Appellee (Transcript), and Judge Plunkett in June, 1990, see *In re Memorial Estates, Inc.*, 116 B.R. 108 (N.D.Ill.1990) (*Memorial Estates*). As the court noted above, both reached the same conclusion—that the bankruptcy court was empowered to enter sanctions itself, rather than certify the question to the district court.

Judge Schwartz based his decision imposing sanctions on two separate provisions—28 U.S.C. § 1927 and Bankruptcy Rule 9011. Both Judge Shadur and Judge Plunkett have expressed their doubts that § 1927 authorizes the bankruptcy court to impose sanctions.[1] See Transcript at 5–7

---

1. § 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or

and *Memorial Estates,* 116 B.R. at 110. But see *In re TCI Ltd.,* 769 F.2d 441 (7th Cir.1985) (affirming bankruptcy court order imposing sanctions under § 1927 without discussing jurisdictional question). While this court also has doubts that Judge Schwartz could have acted solely under the authority of that provision, it need not decide the question here because Judge Schwartz based his action additionally upon Bankruptcy Rule 9011 which, this court holds, does authorize the imposition of sanctions in this matter.

Mr. Needler argues that because the sanctions were imposed for conduct which occurred during the course of a 'related' proceeding, rather than a 'core' proceeding, the question of sanctions itself was 'related', and required certification to a district court. Bankruptcy courts may hear and determine "core proceedings", 28 U.S.C. § 157(b)(1), but in "related" proceedings, are limited to submitting proposed findings of fact and conclusions of law to the district court, 28 U.S.C. § 157(c). There is nothing in the statute which compels the conclusion that the question whether sanctions are appropriate is "core" or "related" depending solely upon the type of proceeding out of which the questioned conduct arose. Indeed, both Judge Shadur and Judge Plunkett have held that the matter of sanctions is a "core" matter.

■ This court would suggest that, whether core or not, the bankruptcy court is empowered to impose sanctions pursuant to 11 U.S.C. § 105, which provides:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce

or implement court orders or rules, or to prevent an abuse of process.

This court has previously held, in *In re The Matter of H. Burton Schatz,* 122 B.R. 327 (N.D.Ill.1990), that § 105 empowers the bankruptcy courts to enter civil contempt orders in core proceedings. If so, then surely it empowers the courts to enforce its own integrity by entering sanctions pursuant to rule 9011. Thus, whether or not the question of sanctions is "core" (and this court believes that it may be neither "core" nor "related", but rather a procedural question which depends upon the power of the court as granted by Congress) the bankruptcy court has the power to enter sanctions for conduct such as that which occurred in this matter—conduct which challenges the very authority of the court.

■ The court also finds Judges Shadur and Plunkett's analyses persuasive, however, and cites them as alternative support for its holding. In his discussion of the issue Judge Shadur first noted that all proceedings, core or related, which take place in the bankruptcy court are governed by the bankruptcy rules. Transcript at 9–10. As Judge Shadur explained, to hold otherwise would make all related proceedings "game[s] without any rules ..."—that is, if the bankruptcy rules did not govern the conduct of related proceedings, then nothing did, and surely that could not have been Congress' intent. This court, as did Judge Plunkett, finds that reasoning compelling and agrees that the bankruptcy rules, including Rule 9011 (the rule upon which Judge Schwartz based his award), govern the conduct of related proceedings.

■ That does not answer the question, however, whether proceedings under Rule 9011 are "core" or "related". Section 157(b)(2) provides a (non-exhaustive) list of "core" proceedings and includes "(A) matters concerning the administration of the estate;" and "(O) other proceedings affecting the liquidation of the assets of the

any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Judges Shadur and Plunkett both expressed the (well-grounded) opinion that the term "court of the United States" does not include bankruptcy courts.

estate or the adjustment of the debtor-creditor or the equity security holder relationship except personal injury tort or wrongful death claims." This court again agrees with Judge Shadur's analysis that conduct which, as Judge Schwartz found Mr. Needler's did, " 'impeded the administration of the estate itself.' " *In re: Memorial Estates, Inc.*, No. 83 B 1016, Adv. No. 83 A 1119 slip op. at 11, (Bankr., N.D.Ill. June 26, 1989), fits within either subsection (A) or (O) and thus the matter of sanctions related to that conduct is "core". Judge Plunkett made a similar finding. *Memorial Estates* at 111.

### 2. Propriety of Sanctions in This Case

Even if the bankruptcy court was empowered to enter sanctions pursuant to Rule 9011, Mr. Needler argues, the imposition of sanctions in this instance was nonetheless improper. The record, however, does not support his claim.

Bankruptcy Rule 9011 provides:

(a) Signature. Every petition, pleading, motion and other paper served or filed in a case under the Code ... shall be signed by at least one attorney of record.... The signature of an attorney ... constitutes a certificate that the attorney ... has read the document; that to the best of the attorney's ... knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; *and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation....* If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

(Emphasis added). For purposes of this case, therefore, Rule 9011 is co-extensive with Fed.R.Civ.P. 11, and the cases interpreting that rule are applicable to this dispute. For simplicity, this court will, for the remainder of this opinion, refer to the two interchangeably as "Rule 11".

■ As Judge Schwartz noted, there are two 'prongs' of conduct which Rule 11 prohibits: 1) the filing of a document which is not supported by a reasonable investigation of the facts or by the law; or 2) the filing of a document for an "improper purpose". Judge Schwartz relied for the most part on the second, 'improper purpose' prong of the rule in imposing sanctions against Mr. Needler, finding that Mr. Needler and Cemco "multiplied the[ ] proceedings and demonstrated an intention to delay and harass". *In re Memorial Estates*, No. 83 B 1016, Adv. No. 83 A 1119 (Bankr.N.D.Ill. June 26, 1989) slip op. at 33. Judge Schwartz had ample support for his decision. This court has outlined some of the conduct which led to the imposition of sanctions above, and refers the reader to the bankruptcy court's own decision and appendices thereto for a more thorough rendition of the precise facts which led to the decision to impose sanctions.

Judge Schwartz also carefully considered the amount of sanctions appropriate in this instance, and devised a formula by which he attempted to charge Mr. Needler and his cohorts for the time spent by opposing counsel and the trustee on each instance of sanctionable conduct. The court's estimates of time were conservative and clearly not an abuse of his discretion. This court will therefore not disturb the amount of the sanction imposed.

### 3. Due Process

■ That leaves the court with the final issue properly before it on this appeal—whether the bankruptcy court afforded Mr. Needler all the process he was due prior to imposing sanctions. That matter can be dealt with fairly quickly. The Bank requested sanctions a number of times during the course of the proceedings in the bankruptcy court and finally filed a motion

consolidating all those requests. When the motion was fully briefed (including Cemco's surreply) the court ruled. The bankruptcy court opinion also refers to a hearing held on the matter of sanctions. It appears from the record that the hearing was held on one of the Bank's earlier motions, rather than the consolidated motion. Because this court agrees with the bankruptcy court that "[h]earings are not essential where the record in the case is sufficient to support the award of sanctions," Transcript at 23, it need not decide whether or when such a hearing was held. See e.g. *McLaughlin v. Bradlee*, 803 F.2d 1197, 1205 (D.C.Cir.1986), citing Fed.R.Civ.P. 11 advisory committee notes, which require that "the court must to the extent possible limit the scope of sanction proceedings to the record."

The court's decision was based upon the record and amply documented. There is no question that Mr. Needler not only was given notice, both formally at the time the Bank's motion was made and informally during the course of the proceedings before that court, of the likelihood of the imposition of sanctions. Furthermore, he was granted an ample opportunity to be heard, filing not only a response to the Bank's motion but, as the court noted above, a surreply. There has thus been no conceivable abuse of Mr. Needler's right to due process.

### Conclusion

The decision of the bankruptcy court is affirmed.