In re Thomas R. VOLPERT, Jr., Debtor.

John VOLPERT, Sr., Plaintiff,

v.

Thomas R. VOLPERT, Jr., individually d/b/a Mind Over Matter Games, and as President of Mind Over Matter Games, an Illinois corporation, Defendants.

Nos. 93 B 13982, 95 C 1722.
Adversary No. 93 A 1705.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 6, 1995.

Bernard M. Ellis, Chicago, IL, pro se.

Joel Alan Brodsky, Brodsky & Hoxha, Chicago, IL, for appellee John Volpert, Sr.

## MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

In this action appellant, Bernard M. Ellis ("Ellis"), appeals from the bankruptcy court's ruling in *In Re Volpert*, 177 B.R. 81 (Bankr. N.D.Ill.1995), in which the bankruptcy court ordered Ellis to pay $1000 in sanctions under 28 U.S.C. § 1927 for "unreasonably and vexatiously" multiplying the proceedings. For

the reasons stated below, the court affirms the bankruptcy court's decision.

## BACKGROUND

Thomas R. Volpert (the "Debtor") filed a *pro se* Chapter 7 bankruptcy petition on June 30, 1993. Debtor's uncle, plaintiff John Volpert, later filed a seven-count adversary complaint, to which Debtor was required to respond by January 29, 1994. Debtor did not answer or otherwise plead by the deadline, but Ellis appeared on his behalf at a status hearing on February 2, 1994. At the status hearing, Ellis was given a fourteen-day extension to file an answer, but this new deadline was missed as well.

Ellis appeared before the bankruptcy court again on April 21, 1994, in response to plaintiff's motion for an order of default. At Ellis' request, the motion was continued until May 11, 1994, in order to allow Ellis more time to complete his pleadings. On May 2, 1994, Ellis moved to dismiss the entire complaint because plaintiff allegedly lacked standing, and also to dismiss individually Counts 1, 2, 3 and 6 on various other grounds. The bankruptcy court denied the motion to dismiss for lack of standing the same day, and ordered Ellis to respond to Counts 4, 5 and 7 within seven days.

On May 11, 1994, however, rather than submitting an answer, Ellis asked the bankruptcy court to reconsider the denial of his motion to dismiss for lack of standing. The bankruptcy court rejected this request and gave Ellis another seven-day extension to file an answer to Counts 4, 5 and 7. The bankruptcy court also warned Ellis that failure to respond this time would result in an entry of default. Despite his repeated assurances to the bankruptcy court that he would file an answer by May 18, Ellis again missed the deadline. Instead, on May 19, 1994, Ellis moved to dismiss Counts 4, 5 and 7 individually on various grounds, or, alternatively, for a more definitive statement regarding those counts. On May 25, the bankruptcy court denied the motion to dismiss but required plaintiff to file a more definitive statement within fourteen days. Ellis was ordered to answer Counts 4, 5 and 7 once he received the more definitive statement.

Ellis finally filed an answer to Counts 4, 5 and 7 on June 22, 1994. This answer, though, was found to be legally insufficient by the bankruptcy court. On July 1, 1994, the bankruptcy court struck the answer, and entered an order of default on Counts 4, 5 and 7. On July 11, Ellis moved to vacate the default order and for leave to file an amended answer. Ellis failed to serve plaintiff's counsel with a copy of the proposed amended answer, however, and due to this failure, the motion was denied. On July 15, 1994, Ellis moved for reconsideration of his July 11 motions, but he again failed to serve plaintiff's counsel with a copy of his motion, even though both attorneys work in the same office building. On July 25, 1994, the bankruptcy court gave Ellis until July 27, to give plaintiff's counsel proper notice of his proposed amended answer, and set a hearing on the motion to vacate the default for the next day.

Finally, on July 28, 1994, the bankruptcy court vacated its default order and allowed the Debtor to file his amended answer. The bankruptcy court also gave plaintiff twenty-eight days to file an application for sanctions against Ellis, which plaintiff did on August 8. Then, on January 18, 1995, the bankruptcy court ruled that Ellis' delays in filing the Debtor's answer, the legal insufficiency of the answer he finally filed, and his repeated failure to serve plaintiff's counsel with proper notice of his proposed amended answer, demonstrated conduct that "unreasonably and vexatiously" multiplied the court's proceedings. Accordingly, the bankruptcy court granted plaintiff's motion for sanctions, and awarded plaintiff $1000 in attorneys' fees under 28 U.S.C. § 1927. Ellis then brought this appeal.

## DISCUSSION

I.  Bankruptcy judges have the authority to sanction attorneys under 28 U.S.C. § 1927

■ In pertinent part, 28 U.S.C. § 1927 reads as follows:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so

multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorney's fees reasonably incurred because of such conduct.

The major issue in this case is whether a bankruptcy judge has the authority to sanction an attorney under 28 U.S.C. § 1927. As recognized by the bankruptcy court, this is an unsettled question. One judge in this district has expressly held that bankruptcy courts do not have jurisdiction to impose section 1927 sanctions, *Regensteiner Printing Co. v. Graphic Color Corp.*, 142 B.R. 815, 818 (N.D.Ill.1992) (Aspen, J.), and other judges have expressed concern over the question without directly resolving it. *E.g., In Re Memorial Estates, Inc.*, 132 B.R. 19, 20–21 (N.D.Ill.1991) (Duff, J.); *In Re Memorial Estates, Inc.*, 116 B.R. 108, 110 (N.D.Ill. 1990) (Plunkett, J.). Similarly, the Tenth Circuit recently held in *In Re Courtesy Inns, Ltd.*, 40 F.3d 1084 (10th Cir.1994), that bankruptcy courts may not impose sanctions under section 1927 because they are not "courts of the United States," although it also held that bankruptcy courts still had the inherent authority to sanction persons for filing a bankruptcy petition "purely for the purpose of delaying [a] creditor from enforcing his rights." *Id.* at 1090.

On the other hand, the Seventh Circuit, without directly addressing the jurisdictional issue, has twice affirmed the imposition of sanctions under section 1927 by bankruptcy judges. *Matter of Lewis*, 920 F.2d 935, 1990 WL 208777 (7th Cir.1990) (table, unpublished opinion); *In Re TCI Ltd.*, 769 F.2d 441 (7th Cir.1985); *see also Matter of Memorial Estates, Inc.*, 950 F.2d 1364, 1369–70 (7th Cir. 1991), *cert. denied*, 504 U.S. 986, 112 S.Ct. 2969, 119 L.Ed.2d 589 (1992). Furthermore, bankruptcy courts have imposed section 1927 sanctions without substantial discussion on numerous other occasions. *E.g., Knepper v. Skekloff*, 154 B.R. 75, 79 (N.D.Ind.1993); *In Re Sowers*, 97 B.R. 480, 486 (Bankr.N.D.Ind. 1989); *In Re East Coral, Inc.*, 54 B.R. 1009, 1022 (Bankr.C.D.Cal.1985).

The text of section 1927, set forth above, applies only to "courts of the United States."

Title 28 of the United States Code, in turn, defines "courts of the United States" as follows.

> As used in this title:
>
> The term "court of the United States" includes the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of this title, including the Court of International Trade and any court created by Act of Congress the judges of which are entitled to hold office during good behavior.
>
> The terms "district court" and "district court of the United States" mean the courts constituted by chapter 5 of this title.

28 U.S.C. § 451 (1988).

■ Most courts that have addressed the issue have held that bankruptcy courts are not jurisdictionally separate "courts of the United States." *See, e.g., In Re Courtesy Inns*, 40 F.3d at 1086; *In Re Perroton*, 958 F.2d at 893–94; *Regensteiner Printing*, 142 B.R. at 818; *In Re Memorial Estates*, 116 B.R. at 110. This court similarly finds that bankruptcy courts are not jurisdictionally separate "courts of the United States" because they are not courts "created by Act of Congress the judges of which are entitled to hold office during good behavior." *See* 28 U.S.C. § 451. Bankruptcy judges hold office for a set term of fourteen years, not "during good behavior." 28 U.S.C. § 152(a)(1) (1988). Therefore, they are not an independent "court of the United States" within the meaning of 28 U.S.C. § 451.

■ The courts in *In Re Courtesy Inns, Regensteiner Printing*, and *In Re Memorial Estates*, reasoned that because bankruptcy courts were not separate jurisdictional entities under 28 U.S.C. § 451, they necessarily also lacked jurisdiction to impose sanctions pursuant to 28 U.S.C. § 1927. This court respectfully disagrees that such a conclusion follows a *fortiori*. The plain language of the two statutes clearly allows district courts to impose sanctions under section 1927, and 28 U.S.C. § 151 expressly states that "[i]n each judicial district, the bankruptcy judges in regular active service *shall constitute a unit of the district court* to be known as the

bankruptcy court for that district." (emphasis added).

Under the current bankruptcy scheme, bankruptcy courts do not exercise any original jurisdiction as independent courts. *See Diamond Mortgage Corp. of Ill. v. Sugar*, 913 F.2d 1233, 1238 (7th Cir.1990), *cert. denied*, 498 U.S. 1089, 111 S.Ct. 968, 112 L.Ed.2d 1054 (1991). Instead, they hear and decide cases arising out of Title 11 that are referred to them by the district courts. *Id; see also generally* 28 U.S.C. § 157 (setting forth procedures by which cases may be referred to the bankruptcy courts); N.D.Ill. Local Gen.R. 2.33(a) (providing for a blanket referral of "any and all cases under Title 11 U.S.C. and any and all proceedings arising under Title 11 U.S.C. or arising in or related to any case under Title 11 U.S.C." to the bankruptcy courts). Therefore, bankruptcy courts "no longer exist[ ] as a distinct jurisdictional entity, but [are instead] subsumed within 'the district court' apparatus." *In Re Gianakas*, 56 B.R. 747, 752 (N.D.Ill.1985); *see also GRiD Sys. Corp. v. John Fluke Mfg. Co.*, 41 F.3d 1318, 1319 (9th Cir.1994) ("[B]ankruptcy courts are not separate courts from the district court but are part of it."); *Diamond Mortgage*, 913 F.2d at 1238 ("Bankruptcy courts ... [are] not independent of Article III courts; rather, they ... serve as an arm of those courts.") (citation omitted). Consequently, even if bankruptcy courts do not have the independent authority to impose sanctions under section 1927, they have the indirect authority to do so as an arm of the district courts.

Other courts are in agreement with this line of reasoning. In *In Re Grewe*, 4 F.3d 299 (4th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1056, 127 L.Ed.2d 377 (1994), for example, the Fourth Circuit held that bankruptcy courts are "courts of the United States" for purposes of 26 U.S.C. § 7430, which allows a party to recover its reasonable costs in "any administrative or court [tax] proceeding brought by or against the United States." As the court stated: "Because district courts clearly constitute 'court[s] of the United States' and bankruptcy courts are not separate from, but rather units or divisions of the district court, we think Congress also intended bankruptcy courts to qualify as 'courts of the United States.' " *Id.* at 304. Likewise, Judge Williams in *In Re Chambers*, 140 B.R. 233 (N.D.Ill.1992), held that: "Bankruptcy courts do not operate independently of the United States District Courts; they are adjuncts of the district court. [Therefore,] the court finds that bankruptcy courts are courts of the United States for purposes of 26 U.S.C. § 7430." *Id.* at 238 (footnote omitted).

Ellis notes that, as part of the Bankruptcy Reform Act of 1978 (the "BRA"), Congress explicitly amended the portion of section 451 defining "courts of the United States" to include "bankruptcy courts, the judges of which are entitled to hold office for a term of fourteen years," but then eliminated the change, before it became effective, in 1984 when the Bankruptcy Amendments and Federal Judgeship Act (the "BAFJ") was passed. *See In Re Perroton*, 958 F.2d at 894; *In Re Courtesy Inns*, 40 F.3d at 1086. Accordingly, Ellis maintains, as the *In Re Perroton* and *In Re Courtesy Inns* courts found, that the elimination of the 1978 amendment is compelling proof that Congress did not intend section 451 to encompass bankruptcy courts.

Ellis fails to address, however, as did the courts in *In Re Perroton* and *In Re Courtesy Inns*, that, in accordance with the Supreme Court's decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the BAFJ was intended to correct the constitutional defects of the BRA. In enacting the BRA, Congress essentially granted the bankruptcy courts original independent jurisdiction to hear all proceedings either arising under Title 11, or related to Title 11 cases. *See Diamond Mortgage*, 913 F.2d at 1237. *Northern Pipeline*, though, held that this grant violated Article III of the Constitution. In response, Congress passed the BAFJ, which returned original jurisdiction over bankruptcy matters to the district courts, who could then refer such cases to the bankruptcy courts. *Diamond Mortgage*, 913 F.2d at 1238.

Consequently, under the new jurisdictional scheme created by the BAFJ, the bankruptcy courts are essentially subsumed within the district courts, and thus it would be redundant to list them separately in section 451 as independent "courts of the United States." Therefore, the 1978 amendment would have been inappropriate, and Congress' decision to eliminate it is not evidence of a desire to leave the bankruptcy courts outside of the scope of section 451, but is instead a realization that such an amendment is no longer necessary under the present jurisdictional system. *E.g., In Re Brooks,* 175 B.R. 409, 412 & n. 7 (Bankr.S.D.Ala.1994) (collecting bankruptcy cases that have adopted this reasoning in various contexts); *In Re Melendez,* 153 B.R. 386, 389 (Bankr.D.Conn.1993).

In short, even though bankruptcy courts are not independent "courts of the United States" as defined by section 451, they still fall within the ambit of section 451 by virtue of their status as units of the district courts, which clearly are "courts of the United States." In addition, Ellis does not dispute that, pursuant to 28 U.S.C. § 157 and Local Rule 2.33, the bankruptcy court in the present case had the proper authority to hear and determine plaintiff's motion for sanctions. *See Matter of Memorial Estates,* 950 F.2d at 1370 (finding that the imposition of sanctions under Fed.R.Bankr.P. 9011 was a "core" proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O) because the attorney's conduct "concerned the administration of the estate," and "affected the liquidation of the assets of the estate."). Therefore, the only remaining question is whether the imposition of sanctions in the present case was warranted by Ellis' conduct.

II. The bankruptcy court did not abuse its discretion when it sanctioned Ellis

The imposition of sanctions under 28 U.S.C. § 1927 is reviewed under an abuse of discretion standard. *Pacific Dunlop Holdings, Inc. v. Barosh,* 22 F.3d 113, 119 (7th Cir.1994). Under this standard, an appellate court will not disturb a lower court's decision if the lower court's decision has "a basis in reason." *Marcus v. Shalala,* 17 F.3d 1033, 1037 (7th Cir.1994). An abuse of dis-

cretion has occurred only when "no reasonable person could take the view adopted by the lower court." *Nanetti v. University of Ill. at Chicago,* 867 F.2d 990, 995 (7th Cir. 1989); *see also Littlefield v. McGuffey,* 954 F.2d 1337, 1342 (7th Cir.1992) ("[T]he relevant inquiry is not how the reviewing judges would have ruled if they had been considering the case in the first place, but rather whether *any* reasonable person could agree with the [lower] court.") (quoting *Geitz v. Lindsey,* 893 F.2d 148, 150 (7th Cir.1990)) (emphasis in original).

Section 1927 prohibits "conduct which is intended to impede and multiply the proceedings, spurning any attempt to seek a resolution of meritorious claims." *Kapco Mfg. Co. v. C & O Enter., Inc.,* 886 F.2d 1485, 1491 (7th Cir.1989). Its purpose is to penalize attorneys who engage in dilatory conduct. *Knorr Brake Corp. v. Harbil, Inc.,* 738 F.2d 223, 226 (7th Cir.1984). Sanctions under 28 U.S.C. § 1927 are thus warranted when an attorney acts "in an objectively unreasonable manner by engaging in a serious and studied disregard for the orderly process of justice." *Walter v. Fiorenzo,* 840 F.2d 427, 433 (7th Cir.1988) (citations and internal quotations omitted).

In the present case, Ellis was sanctioned for his repeated delays in answering Counts 4, 5 and 7 of plaintiff's complaint, and for failing to give his opponent proper notice of documents and motions filed with the bankruptcy court. Ellis admits to causing delays which "represented an imposition on Plaintiff and the Bankruptcy Court." He claims, however, that he should not be punished for these delays because the delays were caused, to some extent, by alleged good faith challenges to plaintiff's standing and the sufficiency of Counts 4, 5 and 7. In support of this argument, Ellis notes that plaintiff was eventually required by the bankruptcy court to file a more definitive statement of his claims.

This, however, is beside the point. The fundamental problem with Ellis' filings is not so much the substance of his arguments as it is the dilatory and haphazard manner in which he presented them. *See Kapco,* 886

F.2d at 1493 (stating that an attorney's protestations that the claims he advanced on behalf of his client had merit were "of no value where his actions unnecessarily prolonged the litigation for purposes of harassment"). Had Ellis raised his objections to plaintiff's complaint in a unified and timely fashion, there would be no cause for sanctions. Ellis, though, chose to wait almost three months beyond the date the answer was originally due before filing any responsive pleading. Then, through multiple motions to dismiss and for reconsideration, he delayed answering Counts 4, 5 and 7 for an additional two months, despite repeated orders by the bankruptcy court to do so. Moreover, even this answer was inadequate, and it was another month before Ellis finally filed an acceptable amended answer.

This overall course of conduct, coupled with Ellis' practice of failing to serve properly plaintiff's counsel with notices of hearings and other documents, even though the two attorneys worked in the same building, is the reason Ellis was sanctioned. From the record, the court finds that the bankruptcy court could have reasonably concluded that Ellis acted with the primary intent of delaying the bankruptcy proceedings rather than to advance meritorious arguments. Therefore, the bankruptcy court did not abuse its discretion in determining that Ellis "unreasonably and vexatiously" multiplied the proceedings in the instant case. *See generally Regensteiner Printing*, 142 B.R. at 818 (stating that if a reasonable person could agree with the court's decision to award sanctions under section 1927, there was no abuse of discretion). In addition, Ellis does not dispute that $1000 is an appropriate figure to compensate plaintiff for the additional expenses and fees he incurred as a result of Ellis' conduct. Consequently, the court affirms the bankruptcy court's imposition of $1000 in sanctions under 28 U.S.C. § 1927.

IT IS SO ORDERED.